# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**OKKY FICRADA JAYA**

      Petitioner,

v.                                   Case No. 2:26-cv-00747-WJ-KK

**TODD LYONS,** Acting Director Immigration
and Customs Enforcement;
MARY DE ANDA-YBARRA, Field Office
Director, Enforcement and Removal
Operations, El Paso Field Office;
MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security;
TODD BLANCHE, Acting United States
Attorney General; DORA CASTRO, Warden,
Otero County Processing Center,

      Respondents.

## MEMORANDUM OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR
## PRELIMINARY INJUNCTION AND ORDER OF DISMISSAL WITH PREJUDICE

THIS MATTER is before the Court upon Petitioner Okky Ficrada Jaya's Petition for a Writ

of Habeas Corpus **(Doc. 2)** pursuant to 28 U.S.C. § 2241 ("the Petition") and Emergency Motion

for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65(b) **(Doc. 15)**. Petitioner is an Indonesian

citizen who came to the United States to study in 2011 with an F-1 student visa. That visa has

since terminated, and Petitioner alleges he is seeking its reinstatement. Petitioner suffers from

paranoid schizophrenia. Petitioner alleges that while in ICE custody he is not receiving necessary

treatment for his condition and seeks his immediate release so that he can better address his illness.

Petitioner is presently detained at the Otero County Processing Center in New Mexico

where he has been in ICE custody since May 12, 2025. ***See* Pet'n at 1**. Petitioner challenges the

lawfulness of the fact and duration of his detention under the United States Constitution and the

federal immigration laws. The Court properly exercises habeas jurisdiction over the petition. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

## BACKGROUND

When Petitioner first entered the United States in 2011, he had lawful status pursuant to an F-1 student visa to attend college in Washington State. He then transferred to the University of California Riverside ("UCR") in the Spring of 2015. Due to an apparent failure to maintain active student status and attend class, Petitioner's student visa program terminated on March 29, 2021. **Docs. 7-2 at 2; 7-3 at 1**.[1] On July 23, 2021, Jaya was taken into custody of the Department of Homeland Security and served with a Notice to Appear. **Doc. 7-10 at 10**; **Pet'n at 2–3; Doc. 7-2 (Notice to Appear); Doc. 7-3 (Superseding Notice to Appear)**. The Notice to Appear charged Petitioner with violating the Immigration and Nationality Act for failing to comply with his conditions of admission — namely, that he attend school. **Doc. 7-3 at 1**. On December 9, 2021, an Immigration Judge declined to order Petitioner's release from custody, citing a failure by Petitioner to show he would not pose a danger to the community or a flight risk. **Doc. 7-4**. Respondent was later ordered released from custody under a bond of $25,000 in January 2022 and on the condition that he maintain enrollment and participation in an Alternatives to Detention program. **Docs. 7-5, 7-6**.

On March 17, 2022, UCR suspended Petitioner from campus. **Doc. 7-12.** The Notice of Interim Suspension described FBI reports that Petitioner had connections with international terrorist organizations and were planning "knife and bombing activities on the UCR campus." **Id.**

---

[1] Petitioner alleges that the belief that he was no longer attending classes was "mistaken" but does not provide proof showing otherwise. **Pet'n at 2**. The July 23, 2021 Form I-213 charging Petitioner with removability states that ICE personnel "went to the UCR Administrative Office and verified that [Petitioner] had been terminated on 3/29/2021" and that "[Petitioner] . . . freely admitted that he knew he was not currently enrolled at UCR, in violation of his F-1 Student status." **Doc. 7-2 at 2–3**

**at 1.** The Notice also reported that University staff observed significant damage to Petitioner's apartment and Petitioner yelling at other residents.  On one occasion in July 2021, Petitioner was reported to have swung a machete in a common area, causing significant damage.  *Id.*  The Notice cited Petitioner with the violation of seven University policies  **Doc. 7-12**.

On August 23, 2022, an Immigration Judge entered a removal order, and Petitioner appealed.  **Doc. 7-7.**  On May 9, 2025, the Board of Immigration Appeals denied the appeal.  **Doc 7-8.**  Petitioner filed a Petition for Review with the Ninth Circuit.  The Ninth Circuit stayed his removal while the Petition was pending.  *See Jaya v. Bondi*, No. 23-3045, 2026 WL 1103266, at *2 n. 1 (9th Cir. Apr. 23, 2026).

In May 2025, Petitioner was charged with violating several conditions of his release.  **Doc. 7-1 at 2**.  On June 14, 2025, Petitioner reported to ICE, at which time he was taken into custody on the removal order.  **Doc. 7 at 3; Doc. 7-3 at 4**.  On December 19, 2025, a custody redetermination hearing was held before an Immigration Judge.  **Doc. 7-13**.  The Immigration Judge concluded Petitioner had not sufficiently shown that he is not a danger to the community or a flight risk and therefore was not a candidate for release.  *Id.*  On April 23, 2026, the Ninth Circuit issued a decision denying the petition for review of the removal order, rendering the removal order "final."  *Jaya v. Bondi,* 2026 WL 1103266; *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021).

The record demonstrates that Petitioner has schizophrenia, a condition for which he requires medical treatment, including multiple daily medications.  **Doc. 7-10 (Respondent's Brief on Pet'n for Review in the Ninth Circuit) at 5** (describing medical records regarding Petitioner's diagnosis of paranoid schizophrenia); **Pet'n at 2–3, 11; Doc. 7-8** (BIA determination that Petitioner "who has been diagnosed with paranoid schizophrenia, lacked sufficient competency to

participate in removal proceedings without safeguards"). Petitioner appends medical evidence dated July 2025 to December 2025 suggesting that he was examined on multiple occasions each month by psychiatrists and other medical professionals, prescribed several psychiatric medications, and subject to ongoing monitoring and medication-management decisions by treating providers. *See, e.g.*, **Pet'n Exs. 11–14; 15–17; 19–21**. Nevertheless, Petitioner alleges that ICE has failed to provide appropriate treatment despite being aware of Petitioner's severe medical needs.[2] **Pet'n at 10.**

On March 12, 2026, Petitioner filed the instant petition for a writ of habeas corpus directing his immediate release and motion for derivative preliminary injunctive relief based on the alleged unreasonable duration of his detention and receipt of inadequate medical care for his psychiatric condition while in ICE detention.

## DISCUSSION

Respondents oppose Petitioner's claims on three bases. In their initial response brief, Respondents argue that this Court lacks jurisdiction over Petitioner's claims because he effectively seeks review of the Immigration Judge's December 2025 bond decision, a discretionary detention decision immune from judicial review. **Doc. 7 at 10**. Respondents also argue that Petitioner's claims regarding the adequacy of the medical treatment he is receiving in ICE custody are not cognizable in habeas and are properly brought instead in a civil rights action. *Id.* **at 3–4.** In the alternative, Respondents seek leave to obtain a more fulsome record of Petitioner's medical condition and any relevant treatment. *Id.* **at 3 n.4**.

---

[2] The Petition also alleges habeas relief is warranted due to measles and chickenpox outbreaks at other nearby detention facilities. **Pet'n at 13–14.** Petitioner states that the upsurge in cases poses a serious risk to his health, though he does not allege that his risk of contagion is higher than other similarly positioned detainees. *See Betancourt Barco v. Price*, 457 F. Supp. 3d 1088, 1099–1101 (D.N.M. 2020) (§ 2241 petitioners failed to show a substantial likelihood of success on the merits of their Fifth Amendment claim based on exposure to COVID-19, absent a showing that they were at a particularly heightened risk). To the extent Petitioner premises his due process claim on this environmental risk affecting the populations at OCPC and other nearby detention facilities writ large, that claim is denied.

After the Ninth Circuit ruled on the petition for review of Petitioner's removal order, Respondents filed an amended, supplemental response brief, raising an additional argument in opposition to the Petition: given that Petitioner is now subject to a final removal order, Petitioner's detention is mandatory under 8 U.S.C. § 1231.   In reply, Petitioner concedes that a final removal order is in effect and that § 1231 governs his detention but contends that the length of his detention is nonetheless unconstitutionally punitive.  **Doc. 16 at 4–5.**

Upon review of the record and applicable law, the Court finds that because § 1231 provides the statutory basis for detention, Petitioner's detention is statutorily authorized — indeed, mandated.  Habeas relief based on the alleged unreasonable duration of that detention is therefore unavailable.  Petitioner's remaining claim concerning the constitutional sufficiency of medical care also must be denied.  Whether, and to what extent, an immigration detainee may obtain habeas relief based on allegedly inadequate medical care is not clearly established in the Tenth Circuit. However, granting that Petitioner's claim is viable and his medical needs serious, the record fails to demonstrate that his custodians have ignored — let alone, intentionally ignored  — his medical needs.  In the absence of any apparent constitutional violation, Petitioner's habeas claims must be denied.

## I.   8 U.S.C. § 1231 Governs Petitioner's Detention

Petitioner asserts that the length of his confinement — approximately 300 days at the time of filing — is unreasonably long and violates his substantive due process rights under *Zadvydas*, 533 U.S. at 687–88.

Noncitizens "ordered removed" are subject to detention under 8 U.S.C. § 1231.  Pursuant to Section 1231, "the Attorney General shall remove the alien from the United States" within 90 days of an order of removal.  The first 90 days following a final removal order is generally referred to

as the "removal period." § 1231. During the removal period, detention is mandatory. § 1231(a)(2)(A). Beyond the removal period, the United States is permitted to detain noncitizens pending removal for a period "reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court has established that detention for six months beyond the removal period is presumptively reasonable. *Id.* at 701.

Since the instant Petition was filed, on April 23, 2026, the Ninth Circuit issued its decision on the removal order. *Jaya v. Bondi*, No. 23-3045, 2026 WL 1103266 (9th Cir. Apr. 23, 2026). With that decision, the order against Petitioner became final, triggering the start of the removal period under 8 U.S.C. § 1231. *Guzman Chavez*, 594 U.S. at 534–35 (explaining that an order of removal becomes administratively final once the BIA has reviewed it or the opportunity for seeking review before the BIA has expired).

As of the date of this Order, Petitioner will have been detained for approximately five weeks beyond that date. Thus, the duration of his detention falls well within the removal period. Because Petitioner's post-removal detention is mandatory under § 1231, Petitioner's claim that the duration of his detention is unreasonable must fail.

## II.    Petitioner's Fifth Amendment Claims Regarding Inadequate Medical Care

Petitioner also claims that his continued detention without adequate treatment for his psychiatric condition violates the Fifth Amendment's substantive due process protections. **Pet'n at 3–4; 5–12.** Petitioner alleges that he managed his condition better prior to detention. **Pet'n at 11**. He also alleges that he requires Guanfacine, a medication used to treat brain fog, which OCPC does not carry and that requires blood checks at a frequency ICE is unable to provide. **Pet'n at 8–9**.

In opposition, the United States characterizes Petitioner's claims as challenging the conditions of his confinement, asserting they therefore fall outside the § 2241 framework and are

6

instead properly brought in a civil rights action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) or § 1983. Doc. 7 at 3–7. It is settled Tenth Circuit law that allegations solely concerning the conditions of one's confinement cannot constitute a basis for relief through a federal writ of habeas corpus. *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). But the Petition does not seek to ameliorate the medical care Petitioner is receiving while in custody; indeed, such a claim would surely be precluded by the Tenth Circuit's habeas precedent. Rather, the Petition alleges that the deficiencies in medical care render the confinement itself unconstitutional. **Doc. 2 at 2**. Thus, the claims may be cognizable in habeas, "an available remedy for federal prisoners who challenge the fact or duration of their physical confinement." *DeParias v. Quinlan*, 974 F.2d 1345, at *1 n. 1 (10th Cir. 1992) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

Even assuming his claims are properly brought in a § 2241 proceeding, Petitioner must establish a constitutional violation warranting relief. Immigration detainees' rights arise under the Fifth Amendment. *See Ziglar v. Abbasi*, 582 U.S. 120, 146 (2017); *Betancourt Barco v. Price*, 457 F. Supp. 3d 1088, 1098 (D.N.M. 2020). The Fifth Amendment's Due Process Clause protects civil detainees from unduly punitive conditions not related to a legitimate government purpose. *Block v. Rutherford*, 468 U.S. 576, 583 (1984). Although the applicable framework is the Fifth Amendment rather than the Eighth Amendment, courts frequently look to Eighth Amendment deliberate-indifference principles when evaluating claims of inadequate medical care. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("The right to custodial medical care is clearly established . . . . Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.") (cleaned up).

The failure to provide medical treatment may constitute undue punishment if the allegations demonstrate "deliberate indifference" to a detainee's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).  In the context of deliberate indifference claims brought by incarcerated individuals post-conviction, under the Eighth Amendment, the Tenth Circuit applies both an objective and subjective analysis.  *Montoya v. Newman*, 115 F. Supp. 3d 1263, 1272 (D. Colo. 2015).  To establish deliberate indifference to medical needs, a claimant must first show that his medical needs are sufficiently serious.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1203–04 (10th Cir. 1996).  Second, the detainee must demonstrate that his custodians have a culpable state of mind — specifically that detention officials are deliberately indifferent to the detainee's serious medical needs.  *Riddle*, 83 F.3d at 1203–04.

"[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotation omitted).  An express intent to harm is not required, but the detainee "must show that [his custodian] acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Est. of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014).  Though the two-element framework governs analogous claims brought by pre-trial detainees, *see Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998), the Tenth Circuit has not yet decided whether the same standard definitively applies to civil detainees, and the Court need not resolve that question here.

Using this framework as a helpful guidepost, the Court concludes that Petitioner's medical needs are sufficiently serious.  The Petition alleges Petitioner was diagnosed with paranoid schizophrenia in 2020, and the severity of his condition led an Immigration Judge to conclude he was incompetent to participate in removal proceedings without safeguards.  ***See* Pet'n at 3; Doc.**

**7-8 at 3–4.**  Evidence submitted in connection with the Petition indicates Petitioner experiences symptoms of brain fog and delusional thoughts, including hallucinations and a belief that he is under the possession of demons.  *See* **Pet'n Exs. 3, 5**.  He takes several prescribed psychiatric medications on a daily basis.  *See* **Pet'n Ex. 9**.  Thus, Petitioner's need for medical attention is obvious.

Nonetheless, the record fails to demonstrate the medical care Petitioner is receiving while in ICE custody is constitutionally deficient.  Petitioner attaches 21 exhibits to his Petition — reports from psychiatric and mental health providers at OCPC dated July through December 2025.  *See* **Pet'n Exs. 1–21.**  The most recent records — reports dated December 22 and 24, 2025 — appear to show that while Petitioner is administered multiple psychiatric medications, he cannot obtain the Guanfacine prescription he desires because OCPC does not carry the medication.  **Pet'n Exs. 20-21**.

More specifically, the record supports that Petitioner reported experiencing brain fog on several occasions and in December, requested treatment, such as the medications "Clozapine and Guanfacine" or "TMS or NAC."  **Exs. 13; 20–21.**  After agreeing to "explore the possibility of prescribing" Clozapine, a treating provider informed Petitioner that OCPC does not prescribe Clozapine or Guanfacine as a general matter and does not have access to the other treatments Petitioner requested for brain fog.  **Exs. 7; 20–21.**  One provider suggested the symptom of brain fog might be attributable to Petitioner's past infection with Covid.  **Exs. 20–21**.  The record states that on several occasions, Petitioner denied experiencing any adverse effects from the medication regimen prescribed by OCPC providers and no additional mental health concerns. **Exs. 15, 17, 19, 21.**

Petitioner therefore does not describe a circumstance in which detention officials have ignored

a serious medical need or refused to provide available treatment.  Rather, the record suggests he seeks a particular course of treatment that facility providers have declined or are unable to provide.  Without more, such allegations do not establish constitutionally deficient care.  *See Lang v. Correctional Health Partners, LLC*, No. 1:19-cv-01558-KLM, 2021 WL 6081924, at *3 (D. Colo. Dec. 23, 2021) ("A prisoner's claim of deliberate indifference is not valid simply because he was denied 'a particular course of treatment' that he desired.") (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006)).

The record further reflects ongoing and frequent medical attention.  Indeed, the numerosity of the reports suggests that Petitioner is examined by a medical provider on average about once a week.  ***See, e.g.*, Ex**.1 **(7/2/2025); Ex. 2 (7/4/2025); Ex. 3 (7/16/2025); Ex. 4 (7/22/25); Ex. 5 (7/25/25); Ex. 15 (10/17/25); Ex. 16 (10/23/25); Ex. 17 (10/31/25).**  The reports resulting from these examinations indicate that Petitioner is advised on and receives adjustments to medication type and dosage depending on his symptoms and further, that Petitioner denies symptoms such as anxiety, depression, and psychosis.  *See* **Ex. 21**.  Although some of the medical records predate the filing of the Petition by several months, Petitioner bears the burden of establishing entitlement to relief.  Nothing in the Petition or supporting materials suggests that the nature, frequency, or quality of Petitioner's medical care has deteriorated in the intervening period.

Petitioner's allegations and supporting evidence do not establish that the care Petitioner is receiving while in ICE custody is constitutionally inadequate.  Petitioner's claim for relief on this basis therefore must be denied.

### III.    Motion for Preliminary Injunction

Last, Petitioner moves for a preliminary injunction, which he styles as an Emergency Motion for a Preliminary Injunction **(Doc. 15)** and is derivative of the due process claims asserted in the

10

Petition.  *See* **Doc. 15 at 6.**  As in his habeas petition, Petitioner seeks the injunctive relief of his immediate release.  *Id.* **at 12.**  Petitioner also seeks a court order preventing his removal to Indonesia or a third country pending his removal proceedings.[3] *Id.* **at 9**.  As grounds for this relief, Petitioner states that he is working to obtain expert analysis of medical records documenting alleged deficiencies in the medical treatment he is receiving at OCPC and that the deprivation of constitutional rights resulting from his continued detention constitutes irreparable harm.  *Id.* **at 4**.

Given that a final removal order has issued, Petitioner's request to enjoin removal pending removal proceedings is, in substance, a request to stay execution of the removal order.  The Court lacks jurisdiction to grant such relief.  *Castillo v. De Andra-Ybarra*, No. 25-1074-JB-JFR, 2026 WL 413407, at *13 (D.N.M. Feb. 13, 2026) (report and recommendation) ("[T]he Tenth Circuit has repeatedly stated that district courts lack jurisdiction to review removal orders, to hear challenges to removal orders, or to stay removal orders.") (citing cases)).  Absent additional bases for preliminary injunctive relief other than those set out in the underlying Petition, which, as explained above, is denied, the Emergency Motion for a Preliminary Injunction **(Doc. 15)** is otherwise DENIED.

## ORDER

The Petition for a Writ of Habeas Corpus **(Doc. 2)** and Emergency Motion for a Preliminary Injunction **(Doc. 15)** are DENIED and this case is hereby DISMISSED WITH PREJUDICE.

**SO ORDERED.**

  __/s/_____
  WILLIAM P. JOHNSON
  SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Petitioner likewise seeks to prohibit his transfer to another district.  *Id.* **at 12.**  He cites no authority supporting such relief and does not otherwise establish entitlement to a preliminary injunction on that basis.